## GAY *v.* THE STATE.

Upon the trial of an indictment under section 114 of the Penal Code, charging a father with wilfully and voluntarily abandoning his child, leaving it in a dependent and destitute condition, proof of actual desertion by the father is necessary to complete the offense. Where a father has actually deserted his child, leaving it in the condition above referred to, and has been convicted of and punished for the offense, he can not be again convicted for a violation of this section, unless it be shown that he has returned to the discharge of his parental duty to the child and has again deserted it; and this is true notwithstanding it appears on the second trial that the original abandonment is wilfully and voluntarily continued, and the condition of the child remains dependent and destitute.

Argued October 3, — Decided October 12, 1898.

Accusation of abandoning child. Before Judge Berry. Criminal court of Atlanta. June term, 1898.

*Thomas L. Bishop* and *George P. Roberls,* for plaintiff in error. *James F. O'Neill, solicitor,* contra.

COBB, J.   Alexander Gay was tried in the Criminal Court of Atlanta upon an accusation charging him with the offense of abandoning his child, leaving her in a dependent and destitute condition.   The accused filed pleas of former conviction and not guilty, and the issues thus arising were, by consent, submitted to the decision of the judge without a jury, upon an agreed statement of facts, which was, in substance, as follows: Accused is the husband of Sally Gay.   They have one child, Lillian, born in 1896.   Neither has any property from which the child can derive a support.   The accused has for some years had good paying employment as a laborer, but he refuses now, and has constantly refused since the begetting of the child, to pay anything to the maintenance or support of either his wife or child. He abandoned his wife and child before the birth of the latter, and has refused to live with the wife or support the child since its birth.   The wife has no means of support except her manual labor, and she lives with her father, who is forced to assist her, otherwise the child would be thrown upon the charity of the public.   The child was abandoned by the father and "left in a dependent and destitute condition" before its birth.   On February 2, 1897, the accused was convicted in the Criminal Court of Atlanta for the abandonment of his child, which had taken place prior to that date, and he paid the fine which was then imposed upon him.   He has never returned to his family, or provided for it or for the child in any way, since the abandonment which was the foundation of the conviction above referred to.   The court entered judgment refusing to sustain the plea of former conviction, and adjudging the accused guilty of the offense charged in the accusation.   To this judgment the accused excepted.

The accusation in the former case, as well as in the present case, was brought under section 114 of the Penal Code.   This section had its origin in an act of the General Assembly, approved December 13, 1866, which was as follows:   "An act to add an additional section to the 4th division, part 4th, title 1st, of the Penal Code.   4. Section 1.   Be it enacted, etc., That if

any father shall wilfully and voluntarily abandon his child or children, leaving them in a dependent and destitute condition, such father shall be guilty of a misdemeanor, and on conviction thereof shall be punished as for other misdemeanors." (Acts 1866, p. 151.) In 1879 an act was passed making the wife a competent witness in prosecutions under the act just quoted. (Acts 1878-9, 66.) The original act as thus amended now appears in the Penal Code in the following language: "If any father shall willfully and voluntarily abandon his child, leaving it in a dependent and destitute condition, he shall be guilty of a misdemeanor. The wife shall be a competent witness in such cases to testify for or against her husband." The accused having been convicted and punished under this section, and being a second time placed upon trial for what is claimed to be the same offense, it becomes necessary to determine whether the word "abandon," in the statute, refers to one completed act of desertion, continuously persisted in, and therefore constituting only one offense, or whether the desertion wilfully continued in from day to day constitutes each day a separate act of abandonment. In other words, does the actual desertion of a child by a father under circumstances which would render him liable to punishment under the law constitute the offense; and when this actual desertion is once punished is the law satisfied; or does an actual desertion, once taken place and wilfully persisted in, make a separate and distinct case of abandonment for each day it continues? If the former is correct, the accused was improperly convicted in the present case. If the latter position is sound, the judgment of conviction was right. In order to determine this question, it is necessary to ascertain what was meant by the General Assembly when they used the word "abandon" in this statute. The word "abandon," in its ordinary sense, means to forsake entirely; to renounce and forsake; to leave with a view never to return; to give over entirely; to forsake or renounce utterly. (See Webster's and Standard Dictionaries.) When referring to the desertion of a wife by a husband, the word has been defined to mean, "the act of a husband in voluntarily leaving his wife with an intention to forsake her entirely,—never to return to her, and never to resume

his marital duties toward her or to claim his marital rights.
Such neglect as either leaves the wife destitute of the common
necessaries of life, or would leave her destitute but for the
charity of others." (Anderson's Law Dict. 4.) The word
"abandonment," when referring to the act of one consort in
leaving the other, is defined to mean, "the act of a husband or
wife who leaves his or her consort wilfully, and with an inten-
tion of causing perpetual separation." (Bouvier's Law Dict.)
And as "the wilful departure of the husband or wife from the
society of the other and the common home, with an intention
never to return or to resume the marital relation." (Rapalje
& Lawrence's Law Dict.) In Schouler on Domestic Relations
(5th ed. § 219), it is declared that, "abandonment by either
spouse consists in leaving the other wilfully and with the inten-
tion of causing their perpetual separation." In the case of
State *v.* Davis, 70 Mo. 467, where the court had under consider-
ation the meaning of the word "abandon" in a statute which
punished a father who should abandon his child or children,
and fail, neglect or refuse to maintain and provide for them,
Henry, J., in the opinion, says: "Abandonment does not mean
a mere temporary absence from home, or temporary neglect of
parental duty." In the case of Stanbrough *v.* Stanbrough, 60
Ind. 275, the court had under consideration a statute which pro-
vided for the relief and support of married women when de-
serted by the husbands, and it became necessary to determine
what the word abandonment meant when used in such a connec-
tion. Niblack, C. J., in the opinion says: "Abandonment, in
the sense in which it is used in the statute under which this pro-
ceeding was commenced, may be defined as the act of wilfully
leaving the wife, with the intention of causing a palpable sep-
aration between the parties, and implies an actual desertion of
the wife by the husband." In the case of Moore *v.* Stevenson,
27 Conn. 14, the court had under consideration the meaning of
the word "abandon" in a statute which authorized a married
woman abandoned by her husband to transact business as a feme
sole, and the conclusion was reached that in such a statute the
abandonment is complete when the husband "voluntarily left
the wife with an intention to forsake her entirely, and never to
return to her, and never to resume his marital duties toward

her, or to claim his marital rights." Applying to the word "abandon," as found in this statute, the meaning which is to be drawn from the definitions above given, it seems clear that, to constitute the abandonment of a child by a father, there must be an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation, and throw off all obligations growing out of the same; that when the effect of this separation is to leave the child in a dependent and destitute condition, the offense under the statute is complete, and nothing less than this will constitute the offense. The act of desertion and the attempt to throw off all parental obligation are necessary component parts of the offense. The continued refusal to provide for the support of the child after the actual desertion takes place is necessary to complete the offense, but it alone is not an offense under the statute. It follows that if a father desert and forsake his child, and the consequence of such desertion is that the child is left in a dependent and destitute condition, the father becomes amenable to the law, and may be punished for that offense; but persistent refusal to provide for the support of the child will not constitute a new offense unless it is accompanied by another act of desertion. Applying these principles to the present case, the accused was entitled to a discharge on his plea of former conviction. When he deserted his child before its birth, and persisted in the refusal to maintain and support it after its birth, the offense of abandonment became complete, the two elements necessary being present. He can not, however, be again convicted of abandonment, under this statute, until he shall return to the discharge of his parental duties and be guilty of another act of desertion. That such is the case is to be regretted, but the meaning of words contained in the statute requires this ruling. The statute is not a remedial measure in the interest of the child, providing for its maintenance. It is a punitive measure, intended in its enforcement to deter parents from deserting their children and leaving them in the condition described in the statute. While abandonment of a child by a father is a misdemeanor, it is possible for the court to impose such a penalty, when the case is clearly made out, as would have the effect of

deterring parents from abandoning their children, if it should not have the effect of making the delinquent father return to the discharge of his parental duties.

.There is nothing in the decisions of this court bearing directly upon the question here involved. In *McDaniel* v. *Campbell,* 78 *Ga.* 188, it was held that an indictment which failed to allege that the abandonment was wilful, and that the child was left in a destitute condition, was fatally defective. In *Bennefield* v. *State,* 80 *Ga.* 107, it was held, that, while a father may have been unable to live in peace with the mother of his children, and compelled by her conduct to separate from her, he was, notwithstanding, under a legal obligation to support the children begotten of her, although on account of the tender years of the children, in order to support them, it was necessary to support the adulterous mother; and where the father had caused his wife and children to be removed to another county, where the children became dependent and destitute, the father was guilty of the crime of abandonment in the latter county. An examination of this case, we think, will show that the act of desertion which was necessary to make out the offense of abandonment under the statute was completed in the latter county, by the father's voluntary removal of the wife and children to that place and leaving them there in such a position that the children became dependent and destitute. While the case of *Jemmerson* v. *State,* 80 *Ga.* 111, is not directly in point, the ruling made, and some of the language used by the present Chief Justice in the opinion, tend to support the conclusion reached in the present case. There the act of desertion took place in the State of Alabama. The wife and child subsequently came to this State, the child being then in a dependent and destitute condition. It was held that there was no offense against the laws of this State, notwithstanding that the child was then dependent and destitute within its limits, because the act of desertion, which was a necessary part of the offense, was committed beyond the limits of the State. In the opinion we find this language: "Before the State can convict of this offense, two things must affirmatively appear: (1) the wilful and voluntary abandonment of a child by its father; (2) the leav-

ing of the child in a dependent and destitute condition.    It is not only necessary that these two things should affirmatively appear, but it also must appear that they occurred in this State. It appears from the testimony in this case that the abandonment of the children took place in Alabama, five or six years before the finding of this indictment.    That is one of the main ingredients of the offense charged; but of that part of the offense the courts of this State had no jurisdiction.    And we do not think that the refusal óf the father to support the children, when notified of their condition by the mother, in this State, subsequent to the abandonment in Alabama, and the removal of the mother to this State, would be such an abandonment as contemplated by the code (§ 4373).    The abandonment is something more than 'leaving them in a dependent and destitute condition.'    It means the forsaking and desertion of the children; the refusal of the father to live where they are domiciled, and to perform the duties of a parent to his offspring.    If he abandons them in this manner in this State, and leaves them dependent and destitute, the offense is complete."    In *Bull* v. *State,* 80 *Ga.* 704, it was held, that a father who within this State wilfully and voluntarily abandons his child before its birth, and persists in the abandonment afterwards, leaving it in a dependent and destitute condition, is guilty of a violation cf the section under consideration.    In *Crow* v. *State,* 96 *Ga.* 297, it was held, that when, in the trial of an indictment for the offense of abandonment, the evidence showed that the father had deserted the child before its birth, and notwithstanding such desertion made from time to time suitable provision for its support, and never at any time refused to make adequate provision therefor, a verdict of guilty was unwarranted by the evidence.

Construing the statute in the light of these decisions, it seems to be settled that, to constitute the offense of abandonment, there must be an actual desertion, followed by a refusal to support; and that the absence of either would prevent the offense from being made out.    As, after a completed act of desertion, there can not be a new act of abandonment until a return to the discharge of the parental obligation, there can be no new offense of abandonment until such a return, followed by

another act of desertion.    The plea of former conviction should have been sustained, and the accused should have been dis- charged from custody.

*Judgment reversed.    All the Justices concurring.*