<hr />

PEOPLE v. FITZGERALD.

(Supreme Court, Appellate Division, Second Department. April 9, 1915.)

PARENT AND CHILD ⬅17—OFFENSES—ABANDONMENT—"PARENT."

 Under Penal Law (Consol. Laws, c. 40) § 480, declaring that a parent or other person charged with the custody of a child under 16, who abandons it in destitute circumstances and willfully fails to furnish necessary food, clothing, or shelter, to be guilty of felony, the father of an affiliated illegitimate child, who had never had its custody or control, or contributed to its support, was not charged with its care and custody, and was not included in the term "parent," which must mean a person charged with care and custody, and could not be convicted of abandonment.

 [Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 176–181; Dec. Dig. ⬅17.

 For other definitions, see Words and Phrases, First and Second Series, Parent.]

Appeal from Westchester County Court.

Edward Fitzgerald was convicted of child abandonment, and he appeals. Reversed, and defendant discharged.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLE-TON, and RICH, JJ.

F. X. Donoghue, of Yonkers, for appellant.
Frederick E. Weeks, Dist. Atty., of White Plains, for the People.

STAPLETON, J. In the County Court of Westchester County the appellant was tried and convicted of the crime of abandonment. The indictment read:

"That the said Edward Fitzgerald, * * * being then and there a parent, to wit, the father, of a child under sixteen years of age, and charged with the care and custody of said child for education and nurture, the said child's name being Irene, and being then and there of about the age of two years, he, the said Edward Fitzgerald, did then and there feloniously, willfully, and unlawfully abandon the said child in destitute circumstances, and feloniously, willfully, and unlawfully omit to furnish said child with food, clothing, and shelter."

The section of the Penal Law for the violation of which he was convicted reads:

"A parent or other person charged with the care or custody, for nurture or education, of a child under the age of sixteen years, who abandons the child in destitute circumstances and willfully omits to furnish necessary and proper food, clothing or shelter for such child is guilty of felony, punishable by imprisonment for not more than two years, or by a fine not to exceed one thousand dollars, or both. In case a fine is imposed the same may be applied in the discretion of the court to the support of such child. Proof of the abandonment of such child in destitute circumstances and omission to furnish necessary and proper food, clothing or shelter is prima facie evidence that such omission is willful. The provisions of section twenty-four hundred and forty-five prohibiting the disclosure of confidential communications between husband and wife shall not apply to prosecutions for the offense here defined. A previous conviction of felony or misdemeanor shall not prevent the court from suspending sentence upon a conviction under this section, or from arbitrarily fixing the limit of imprisonment or fine, in case imprisonment or fine is imposed upon conviction herein.

"Nothing in this section shall be deemed or construed to repeal, amend, impair or in any manner affect the provisions of sections four hundred and eighty-one, four hundred and eighty-two and four hundred and eighty-three of this chapter or any other existing provisions of law relating to abandonment or other acts of cruelty to children."

The child is illegitimate, and the defendant, by an order of filiation in a special proceeding of a criminal nature, was adjudged to be its putative father. The mother, after the birth of the child, married a person other than the defendant. The mother gave the only evidence presented by the people. She testified that the child was born as the result of her illicit intercourse with the defendant. She had the custody of the child ever since its birth; the defendant had no control over it. She and the defendant had not lived together as husband and wife.

The defendant did not testify, but the defense called several witnesses who testified to the bad reputation of the complaining witness and to undue familiarity with men. The people submitted evidence to prove that the complaining witness had the defendant arrested in a

proceeding respecting a bastard, and that the cause had come to trial. The court received in evidence a—

"judgment of this court, entitled 'People of the State of New York, Plaintiff Respondent, against Edward Fitzgerald,' in substance finding this defendant to be the father of this child and ordering him to pay three dollars a week for its support and maintenance."

The document was marked an exhibit, but it is not returned in the record. The defendant was in jail for six months, we presume for failure to give an undertaking. Title 5, Code of Criminal Procedure. Since the birth of the child the defendant did not contribute one dollar towards its support. In the view of the disposition we make of this appeal, we are not required to discuss the propriety of receiving some of the people's evidence.

The defendant contends that the section under consideration was intended to meet the case of a parent who abandoned his legitimate offspring in destitute circumstances and willfully omits to furnish money and proper food, clothing, or shelter for such child, and not the case of an alleged father who abandons a child born out of wedlock. The question presented is: Does the term "parent" in this section include a putative father of an illegitimate child?

We think the word "parent," as used in the law in question, cannot be held to apply to the defendant. It will be noted that the act does not read "a parent or a person charged with the care or custody"; it reads "a parent or *other* person charged with the care or custody." So a parent, to be held, must be a person charged with care and custody. The putative father is not charged with the care and custody of an illegitimate child by the mere fact of putative paternity. In the case at bar it is clear that the defendant had neither the care nor custody of the child. Under the common law a putative father stands in no relation to an illegitimate child, nor can he claim any of the rights of a father.

The term "parent and child" is used to indicate the relation existing between husband and wife, or either of them, on the one hand, and their legitimate offspring on the other. Cyc. page 1583. "All other children have their primary settlement in their father's parish; but a bastard in the parish where born, for he hath no father." Cooley's Blackstone, vol. 1, page 459.

In Gibson, Appellant, 154 Mass. 378, 28 N. E. 296, it was held that a notice required by statute to be given to the parents of the child in proceedings for adoption does not mean a notice to the father of an illegitimate child. In that case notice had been given to the guardian. The court said:

"It follows that the written assent of Gardner, as guardian, was a sufficient consent to the petition for adoption, unless the child had a living parent in the sense of that word as used in Gen. Sts. c. 110, §§ 1–10, then in force. We think that the word 'parent' as there used has its legal signification, and is intended to designate only the lawful father or the mother. There is no reason why the Legislature should confer upon the father the right to notice in such cases. He has no right to the custody of the child, or to the use or control of its estate. He is at most a putative father in reputation only, but not in law. A bastard is in law quasi nullius filius, and therefore he is called 'filius populi,' the child of the people."

In People v. Landt, 2 Johns. (N. Y.) 375, it was held that the mother of an illegitimate child is entitled to its custody; but, if it appear that the child is abused, the court will interfere in the child's behalf and direct that it be placed elsewhere. Chancellor Kent (Commentaries, book II, page 216) says:

"The putative father has no legal right to the custody of a bastard child, in opposition to the claim of the mother. * * * She has a right to the custody and control of it as against the putative father, and is bound to maintain it as its natural guardian."

Horner v Liddiard, 1 Hagg. Cons. 337, was a case of nullity of marriage, brought by the husband against the wife by reason of the minority of the wife, who was illegitimate, and the want of consent as required by the Marriage Act (26 Geo. II, c. 33), which provides that marriages of persons under the age of 21, not widows or widowers, which shall be had without the consent of the father of the parties, or, in certain named contingencies, of the guardian or of the mother, shall be null and void. It was held that the consent of parents was not applicable to the marriage of illegitimate children.

The case of Firmeis v. State, 61 Wis. 140, 142, 20 N. W. 663, involved the construction of a statute substantially similar to ours, and containing a provision identical in purport with the clause contained in ours, permitting a wife to disclose confidential communications. That statute reads:

"If any father shall willfully abandon his child or children, leaving them in destitute circumstances, such father shall be deemed guilty of a misdemeanor: * * * Provided, that the wife shall be a competent witness in all such cases, as provided in this section, to testify for or against her husband." Laws 1882, c. 200, § 1.

The court there held that the state was bound to show that the children abondoned were legitimate children. The clause in the section under consideration, providing that the wife may disclose confidential communications divulged by her husband, is an indication that the statute was meant to apply to cases only where the family relation existed.

In People v. Lewis, 132 App. Div. 256, 258, 116 N. Y. Supp. 893, it is held that the law applies only to a case where there is both abandonment in destitute circumstances and failure to provide. To make the act of abandonment possible, there must be either custody or control. Having been made distinguishable from a mere failure to provide, abandonment can therefore mean only one thing, namely, the physical act of leaving, with the intention not to return, that of which one has custody. See People v. Dunston, 173 Mich. 368, 138 N. W. 1047, 42 L. R. A. (N. S.) 1065; Gay v. State, 105 Ga. 599, 31 S. E. 569, 70 Am. St. Rep. 68. The evidence shows that the defendant did not have the custody of the child, and the cases indicate that he did not have control. The defendant is not within the classification of the statute. He did not commit the essential criminal act of abandonment. The judgment of conviction was erroneous, and must be reversed.

Judgment of conviction of the County Court of Westchester County reversed, and the defendant discharged. All concur.