## 24719. BROCK v. THE STATE.

DECIDED JUNE 19, 1935.

*Astor Merritt,* for plaintiff in error.

*Hal C. Hutchens, solicitor-general, S. W. Ragsdale,* contra.

MacINTYRE, J. The indictment contains two counts; the first charging that, on April 10, 1933, in Douglas county, Georgia, Henry Brock "did wilfully and voluntarily abandon his . . child, Sarah Brock, a girl age two years, leaving said . . child in a dependent condition . . ;" and the second count charging that, on said date and in said county, Henry Brock "did . . wilfully and voluntarily abandon his unborn child, and did still persist in the abandonment of said child after it had been born on May 29th, 1933, said child being a girl child named Betty . . , leaving it in a dependent condition. . ." The jury returned a general verdict of "guilty," and error is assigned upon the judgment overruling the motion for a new trial.

The following is the substance of so much of the testimony of Mrs. Henry Brock as we deem necessary to set out for the purposes of this decision: Witness was the lawful wife of the defendant,

and Sarah and Betty were their children. The family resided with the husband's mother in Campbell county, about fifteen miles from the home of the wife's parents in Douglas county. When Sarah was born the defendant sent his wife to her mother's home. About seven weeks before witness was confined with the younger child, Betty, defendant "sent" her to the home of her father and mother in Douglas county. The defendant visited his wife twice, once on April 10, 1933, the day Betty was born, and again about two weeks later. During the time witness was at her parents' home, the defendant contributed only $1 for the support of witness and her children. On the first visit the defendant said he was going to carry witness home, and "commenced cursing," and, in trying to jerk the child out of her mother's arms, jerked the mother "plumb out on the ground off the porch." The witness further testified: "What I mean by his sending me over there, he was to bring me to Mamma's. He asked me if I wanted to go to Mamma's to be confined, and I told him if he wanted me to I would come; and he said he thought it would be best for me, and he was going to bring me. And that morning he said his uncle would bring me, and I told him I wanted him to bring me and go with me to the doctor, and he said he would come with me next week . . and go with me to the doctor. He got his uncle Dallas Collins to bring me. . . When he came for me to go back, Aaron Collins was with him. . . I think that was just about two weeks after my child was born. I told him that I was not ready to go at that time. He asked me if I would write him when I got ready to go back, and I told him 'yes, I reckon I would.' I never did write him I was ready to go back. Instead of writing him, I sent an attorney with a list of my things, and demanded my things. . . The reason I promised to write him when I would go home, when I had already sent after my things, was because I was afraid to tell him I wasn't going home. He never has come back since that time nor sent me any word to come back home. . . The reason I didn't want to go back to him was that I was afraid of him; he had been cruel to me over there."

H. P. McCullough testified, that he was the father of Mrs. Henry Brock; that the defendant, who appeared to be a strong, healthy man, had contributed nothing towards the support of his wife and children since Mrs. Brock came to witness's home about April 1,

1933; and that witness had been supporting defendant's wife and children since that time. Dallas Collins testified that Mrs. Brock made arrangements with him to carry her to her father's home the day before he carried her there; also that the defendant took a drink sometimes, but didn't drink much.

The substance of the defendant's statement to the jury was that when his wife's father and mother came for her the day before she went, he told her that it was planting time and he "couldn't go up there every day" and would rather that she stay at home; that she "traded with Dallas to carry her;" that he borrowed $5 from his mother and gave it to his wife, and "she said that would do her;" that he went to get his little girl for a few days, but his wife refused to let him take her, and her mother and sister "jumped on" him, and her mother kicked him and ordered him off; that his wife refused to go with him, but said she would come home next week, and said she would write to him when she was coming, but never did; that he never knew his wife was not coming home until her lawyer brought him a list of her things and told him she never intended to come home; that "the doors were open when she left and everybody thought she was coming back;" that he provided for her the best he could when she stayed with him, but that he had been in jail for six months and "hadn't made a dime in a year." It appears from the record that the defendant was put in jail for failing to pay alimony.

Error is assigned upon the following charge of the court: "So that if the father failed to furnish food and clothing to a child or children in Douglas county, after the children were brought here, and the dependent condition began in this county, then, of course, this county would have jurisdiction of the case and he would be guilty here." Error is alleged because neither in this excerpt nor in any other part of the charge did the court submit to the jury "the question as to whether or not the children were brought to Douglas county on account of the abandonment of the father, movant insisting that it was a question of fact, to be submitted to the jury, . . as to whether or not the children were in Douglas county on account of the abandonment of them by their father,—were they sent to Douglas county by the father, or did the mother voluntarily leave the father . . and bring the children to Douglas county?" "Movant

further insists that said charge was error in that it had the effect, and in fact was, a direction to the jury to find the defendant guilty if they should believe that he, the father, had failed to furnish food and clothing to them in Douglas county, without regard to any consideration whatever on the part of the jury as to why they were in Douglas county, and without any consideration of the right of the father to select the domicile of his children and to support them at such domicile, and without any consideration of the question as to whether or not the children were sent to Douglas county by their father in pursuance of his intention to abandon said children."

"If any father shall wilfully and voluntarily abandon his child, leaving it in a dependent condition, he shall be guilty of a misdemeanor. . . A child thus abandoned by the father shall be considered to be in a dependent condition when the father does not furnish sufficient food and clothing for the needs of the child." Code of 1933, § 74-9902. "Before the State can convict of this offense, two things must affirmatively appear: (1) the wilful and voluntary abandonment of a child by its father; (2) the leaving of the child in a dependent and destitute condition. . . The abandonment is something more than 'leaving them in a dependent and destitute condition.' It means the forsaking and desertion of the children; the refusal of the father to live where they are domiciled, and to perform the duties of a parent to his offspring." *Jemmerson* v. *State*, 80 *Ga.* 111 (5 S. E. 131). "Applying to the word 'abandon,' as found in this statute, the meaning which is to be drawn from the definitions above given, it seems clear that, to constitute the abandonment of a child by a father, there must be an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation, and throw off all obligations growing out of the same; that when the effect of this separation is to leave the child in a dependent and destitute condition, the offense under the statute is complete; and nothing less than this will constitute the offense. The continued refusal to provide for the support of the child after the actual desertion takes place is necessary to complete the offense, but it alone is not an offense under the statute. . . Construing the statute in the light of these decisions, it seems to be settled that, to constitute the offense of abandonment, there must be an actual desertion, followed by a refusal to support; and that the absence of either would pre-

vent the offense from being made out." *Gay* v. *State,* 105 *Ga.* 599 (31 S. E. 569, 70 Am. St. R. 68). Though these decisions were rendered before the word "destitute" was taken out of the statute, they bear directly upon the question of what constitute desertion.

In the recent case of *Blackwell* v. *State,* 48 *Ga. App.* 221 (172 S. E. 670), this court brings out clearly the meaning of the word "desertion" under our present statute, and emphasizes the fact that the offense is made of two elements, each as necessary as the other. The first headnote of that decision is: "There are two elements in the offense of abandonment of a child: (a) desertion, that is, the wilful forsaking and desertion of the duties of parenthood; (b) dependency, that is, leaving such child in a dependent condition: *Both elements must be present to complete the offense."* (Italics ours.) Intention is peculiarly a part of the offense of abandonment. *Phelps* v. *State,* 10 *Ga. App.* 41 (72 S. E. 524). In *Bennefield* v. *State,* 80 *Ga.* 107 (4 S. E. 869), the father hired another to move the wife and child to her father's in another county. The child was not dependent in Heard county, but became so after it was left in Carroll county. The court said that moving the child into Carroll county was the act of the father; that "it was the same as if he had stood upon the county line between Heard and Carroll, and had pushed his child across the line into Carroll, and then left it dependent and destitute." It was held that the court in Carroll county had jurisdiction of the case. We cite this case because its facts are somewhat similar to the case at bar, and because it emphasizes the intention of the father in sending the children into another county.

In the case at bar the dependency was proved beyond question, and the evidence tends to show that it began in Douglas county; but, under the evidence and the defendant's statement, it was a jury question as to whether or not the other essential ingredient of the offense,—desertion,—was proved. The charge was, in effect that, if the father failed to furnish the children with food and clothing after they were carried to Douglas county and their dependency began in that county, that county "would have jurisdiction of the case and *he would be guilty here."* (Italics ours.) The jury must have concluded from this charge that dependency alone made the crime, and, dependency having been proved beyond ques-

tion, a conviction was practically unavoidable. No doubt the court intended to charge the jury that the venue of the offense is in the county where the dependency of the minor begins, but we think that the charge given had the effect of taking from the jury the right to determine the controversial question of desertion. We hold that the charge was erroneous and injurious, and a new trial must be granted because of it.

We detect no error in the excerpt from the charge complained of in the second special ground of the motion for a new trial. The general grounds will not be considered.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*