37 N.J. Super. 595 (1955)
117 A.2d 654
STATE OF NEW JERSEY, PLAINTIFF,
v.
CASEY NAPOLEON, JR., DEFENDANT.
Superior Court of New Jersey, Hudson County Court Law Division.
Decided November 3, 1955.
*596 Mr. Frederick T. Law, Prosecutor of Hudson County (Mr. Michael G. Comunale, Assistant Prosecutor, appearing), attorney for the State.
Mr. Abraham Miller, attorney for defendant.
NIMMO, J.C.C.
The defendant was indicted March 13, 1949 charged with deserting and willfully neglecting and refusing to provide for the support and maintenance of his minor child in destitute circumstances.
The indictment recites R.S. 2:121-2 as the applicable statute, which now appears in the same language as N.J.S. 2A:100-2 in the revision of 1951.
The defendant moves to dismiss the indictment on the ground that the defendant is the father of the child only because of an order of filiation in a bastardy proceeding, and that the statute above cited only applies to legitimate children.
The statute in question reads as follows:
"Any husband who deserts or willfully neglects or refuses to provide for the support and maintenance of his wife, in destitute or necessitous circumstances, or a parent who deserts or willfully neglects or refuses to provide for the support and maintenance of his or her minor child or children, in destitute or necessitous circumstances, is guilty of a misdemeanor." (Italics supplied)
Defendant argues that this statute only covers a family situation where it is a husband or a wife who have neglected or refused, etc.; that the word parent as used in the statute applies to parents of children born in wedlock.
*597 As a result of what is commonly known as a bastardy proceeding, this defendant was determined to be the father of the neglected child the subject of this indictment. No issue is raised as to the competency of the court that entered the order of filiation, or that it was improperly entered.
We are here concerned with the meaning of the word parent and the intent of the Legislature when the law was enacted. Does the statute only apply to fathers and mothers who are married to one another?
Defendant cites the case of Gardner v. Hall, 132 N.J. Eq. 64 (Ch. 1942), affirmed 133 N.J. Eq. 287 (E. & A. 1943). This case, however, deals with an adopted child and it was held that the child's parentage was artificially created by law and that that child was not begotten by the petitioner. While the parentage in this Gardner case was created by a court proceeding, the basis for that finding differs greatly from the situation we have here. The New York case, People v. Fitzgerald, 167 App. Div. 85, 152 N.Y.S. 641, cited by defendant would indicate that the New York statute applies to persons who have custody and control of children. There is no such limitation in the New Jersey statute which forms the basis for the indictment.
The case of State v. Chaffman, 15 N.J. Super. 492 (App. Div. 1951) is cited by defendant as dispositive of the instant application. The defendant in the Chaffman case had been ordered to support his dependents and the litigation arose because of a contempt proceeding, and whether a violation of an order for support made pursuant to R.S. 2:121-2 was a civil or criminal contempt. There is a sentence in the opinion in that case which this defendant relies upon. That sentence is as follows:
"The main purpose of the statute (R.S. 2:121-2 to 7, N.J.S.A.) is to provide for destitute wives and children of husbands who desert or neglect or refuse to support and maintain them."
The case before that court involved married parents and it was not called upon to define parent as in this case. There is no doubt that the greater number of cases do deal with *598 married parents and that court was justified in saying what it considered the main purpose of the statute. The words used do not in the opinion of this court restrict the purpose of the statute so as to only cover the class of persons it then had before it.
R.S. 2:121-2, now N.J.S. 2A:100-2, after making a husband who deserts and fails to support his wife and children liable to prosecution, continues on with the words, "or a parent who," etc. In the opinion of this court the statute is clear and that the Legislature intended to make liable not only husbands and wives but parents generally without regard to marital status.
In antiquity the word "parent" was ascribed to the father, the one who begets. In the not too distant past a child was considered an orphan upon the death of its father. In Websters New International Dictionary (2d ed.) (unabridged) we find "parent" as one who begets or brings forth. In Ballentine's Law Dictionary it appears that "parent" is a word which refers primarily to the father of a child, but sometimes to the mother or (under modern statutes) to the two jointly.
The so-called Bastardy Act, while intended to relieve the community of the support of children born out of wedlock, does as the basis for an order of filiation require a finding that the one ordered to support the child is its father. It is urged that the order of filiation is obtained in a criminal proceeding or at best a quasi-criminal proceeding, therefore the only recourse is through the tribunal that made the order. Regardless of the kind of proceeding that established that this defendant is the father of the neglected child, the relationship of father and child has been legally determined. It is the opinion of this court that that relationship having been established, the State is not limited in its prosecution of this defendant and is not required to proceed through the welfare director of the community concerned or have the mother proceed as it is indicated she may in Hall v. Centolanza, 28 N.J. Super. 391 (App. Div. 1953).
Motion to dismiss the indictment is denied.