CASE 39—PETITION EQUITY—MAY 4.

## Dixon v. Hosick.

101    231
f128    281

APPEAL FROM LIVINGSTON CIRCUIT COURT.

1. GUARDIAN AND WARD—ADVANCEMENTS.—A guardian or person having charge of an infant has no legal right to have sold the real estate of such infant for the re-payment of moneys voluntarily advanced by the guardian or such person for the maintenance and education of the infant, without having previously sought and obtained the authority of a court of chancery to incur such liability and make such disbursements.

2. PARENT AND CHILD—STEP-FATHER.—While a step-father is not bound to support his step-children, or they to render him service, where he maintains them and accepts their services, they will be regarded as having dealt with each other as parent

and child, and in the absence of an express agreement he can claim no compensation for their support, and will be treated as standing *in loco-parentis* to them.

3. SAME.—But the guardian and step-father having paid after the death of his infant ward and step-child her burial expenses and doctors' bills, was entitled to be reimbursed for such expenditures, and a sale of her land to settle same.

JOHN K. HENDRICK FOR APPELLANT.

1. A court of equity will uphold and sanction that which has been done if it would have authorized the doing of the same, if it had been applied to. In this case any chancellor would certainly have authorized the appellant and his wife to do what they did do for the infant. Withers v. Hickman, 6 B. M., 295; Jarret v. Andrews, 7 Bush, 311; Campbell v. Golden, 79 Ky., 544.

2. The guardian of a female ward with only an estate consisting of unproductive land and who had made advancements for her sustenance, clothing, and education and suitable necessaries, may subject the real estate to the payment of such advancements. Jarret v. Andrews, 7 Bush, 314; Campbell v. Golden 79 Ky., 594; Withers v. Hickman, 6 B. M., 292; 2 Met., 204; 3 Bush, 546; 14 Bush 503.

BUSH & WORTEN FOR APPELLEE.

1. A step-father *in loco-parentis* can not charge a child for its support, unless he is so poor as to be unable to furnish it, or unless the estate of the child is sufficiently large to justify the charge. 36 Amer, Rept., 254, and note; 36 Amer Rept., p. 229; Schouler on Domestic Relations, p. 378; Sweatman v. Sweatman, 8 Ky. Law Rept., 266; Hickman v. Tudor, 8 Ky. Law Rept.; Roland v. Monon, 8 Ky. Law Rept., 618; Riley v. Riley's Adm'r., 11 Ky. Law Rept., 859; Chapman v. Moore, 7 Monroe, 189.

2. The rule of law in Florida, where the parties resided, is that while the husband is not bound to take care of his wife's children by a former husband, if he takes such child into his family, the relation of parent and child is established, and the step-father can not demand compensation for its education and maintenance, and the child can not claim pay for services; this is not only the rule in Florida but the general rule. Fuller v. Fuller, 23 Fla., 236; Osborn v. Van Horn, 2 Fla.; McClelland's Digest of the Laws of Florida, chap. 51, pp. 324,

330; Amer. & Eng. Enc. of Law, vol. 9, p. 101; Folger v. Heitle, 60 Mo., 284; Webster v. Wadsworth, 44 Ind., 283; Whipple v. Doe, 2 Mass., 418; Mulhern v. McDavitt, 16 Gray (Mass.), 414; 2 Parsons, p. 576.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

James A. Hosick died, intestate, in 1878, leaving surviving him a widow and one child, a daughter. At his death he owned in fee simple two tracts of land situated in Livingston county, Kentucky, one containing 74 acres and the other about 140 acres. After his death, by proper proceedings, the 74-acre tract was allotted to the widow as dower, and the residue of the real estate was set apart to the infant, then about 8 years old.

In 1881 the widow of James A. Hosick married J. M. Dixon, of Titersville, Florida, and immediately moved, with her husband, to his home in that State, taking with her the infant daughter, who continued to reside with them until her death on December 24, 1891, the infant being at that date about 20 years of age. After the marriage of her mother she was treated by her step-father as if she had been his own child. He boarded, clothed, schooled and provided for her in every way.

In 1883 he qualified as her guardian by appointment of the county judge of Brevard county, Florida, but he never made any settlement of his accounts as guardian—so far as the record shows—until after the death of his ward, and his services as guardian were limited to the collection of the small sum obtained from the rent of her land in Kentucky, of which he took possession at the time of his marriage to her mother.

After the death of. the infant, William B. Hosick instituted this suit against the defendants, J. M. Dixon and his wife, the mother of the infant, who were in possession of the land, alleging that he was the grandfather of the infant, who had died unmarried and childless, without brothers or sisters, nephews or nieces surviving her, and that by law he was the owner of the real estate which descended to her from the estate of her deceased father, who was the son of plaintiff, and prayed that the possession and ownership of such real estate might be adjudged to him.

The claim of the plaintiff is resisted by the defendants, because, they say, after the marriage of the defendant J. M. Dixon to the mother of the infant, the widow of James A. Hosick, which occurred in August, 1881, until the death of the infant on December 24, 1891, defendant Dixon had supported the infant, furnished her with board, lodging, washing, schooling and clothing during this period, and that after her death he had paid $125 for her burial expenses, and a physician's bill of $250 for attention and service during her last illness; and he claims that her land was justly chargeable with the repayment of all this money, which amounted in the aggregate to the sum of $3,685, less a credit of $158 which he admits having collected from the rent of the real estate of the infant.

He further alleges that the infant had no estate except the land in contest, and no income during the period except a small pittance realized from the rent of her land; and that these advancements and disbursements made by him for her, were necessary in view of her sex, age and social environment.

He further alleges that after the death of the infant, viz., on the 4th day of April, 1893, he had made a settlement of his accounts as guardian with the county judge of Brevard county, Florida the county of his and her residence, and that he had been allowed, after deducting all credits to which the estate of the infant was entitled, the sum of $3,525 20 as the balance due to him as guardian; and he prayed that he be adjudged a lien on the land described in plaintiff's petition, and that it be sold to satisfy this claim for money so advanced by him.

Plaintiff denied the affirmative allegations of the answer, and resisted the relief sought by the defendant on his counter-claim, and the chancellor having found for plaintiff this appeal is prosecuted.

The question involved in this appeal is the legal right of a guardian or person having charge of an infant to have sold the real estate of such infant for the repayment of moneys voluntarily advanced by such guardian for the maintenance and education of the infant, without having previously sought or obtained the authority of a court of chancery to incur such liability or make such disbursements.

The provisions of the statutes bearing upon this question are sections 2,034 (and the sub-sections thereunder) and 2,039, of the Kentucky Statutes, which are as follows:

"Section 2,034. No disbursement shall be allowed the guardian for the maintenance and education of the ward beyond the income of the estate, except in the following cases, unless authorized by deed or will under which the estate is derived:

1. When the ward is of such tender years or infirm health

that he can not be bound out as an apprentice, or no suitable person will take him as such.

2. When it is best for the ward that the principal of his personal estate shall be applied for his board and tuition, and the court, upon settlement of the accounts, shall deem such application to have been judicious and properly made. But neither the ward nor his real estate shall be made liable for any such disbursements.

"Section 2039. The several courts of chancery shall have power to hear and determine all matters between the guardian and ward, require settlements of guardianship accounts, remove a guardian for neglect or breach of trust, control the custody and tuition of the ward and the management and preservation of his estate, and direct a sale of his real estate, if necessary to the proper maintenance and education of the ward, or for the payment of his debts."

Section 2,034 limits the disbursements allowed guardians for the maintenance and education of the ward to the income of his estate, unless the ward is of such tender years or infirm health as to make it impossible for him to earn any part of his support, but if, upon a settlement of the accounts of the guardian, the court shall deem expenditures for board and tuition made by the guardian to have been judicious and proper, the principal of the personal estate may be so applied; and this is the limit of the power given by this section of the statutes to guardians, the statute imperatively declaring that neither the ward nor his real estate shall be liable for such disbursements.

It is true that section 2,039 authorizes courts of chancery to direct a sale of the real estate of infants, if necessary

Dixon v. Hosick.

to the proper maintenance and education of the ward, or for the payment of his debts, but we think it was the manifest intention of the law that the real estate belonging to infants should not be sold or made liable to charges of any kind until the character and necessity of such proposed liability for his benefit should have been considered and approved by a court of chancery authorized to decree such sale. No other construction will harmonize the apparent contradiction in the sections of the statutes quoted above, or secure to the infant the protection which it has always been the policy of the law to throw around them. This was the provision of the common law (See Kent, Vol. 2, page 229, 14th Edition; Minor's Institutes, Vol. 1, page 479,) and the statutes are merely declaratory of the common law on this point.

And this limitation upon the power of guardians to charge the real estate of their wards has been frequently declared by this court. In the case of Chapline v. Moore, 7 Monroe, 171, this court said:

"A court of equity never sanctions the conduct of a guardian to break in upon the capital of the infant's estate, by his own authority; the court may be applied to under extraordinary circumstances, and has rarely permitted by its own order a reduction of the capital; the circumstances must be cogent and extraordinary to induce the court to assent to break in upon the capital; the income may be anticipated under suitable circumstances, but for the mere purpose of maintenance of a child in health and infancy, a court of equity will not permit a sinking of the capital. Cases of hardship may occur where the estate of the ward is not suf-

ficient for maintenance and education out of the yearly prof-
its or interest, but it is better that an individual should
suffer such hardship, than to break through a general rule,
to the endangering the interests of all infants."

And in the case of Cox's Guardian v. Storts, 14 Bush 504,
in a proceeding to subject the real estate of an infant to the
payment of board and tuition, this court said:

"If the real estate of an infant can be subjected in this
mode to such contracts for the reason that the claim origi-
nated from necessaries furnished the infant, in every in-
stance the statute may be avoided and the legislative intent
disregarded. It is immaterial how meritorious the claim
may be, the chancellor has no power by reason of the statute
to appropriate the proceeds of the sale of the infant's real
estate for such purposes. The rents or income may be so ap-
plied, but not the principal."

And these opinions seem to us to be in consonance with
what has been the settled policy of the common
and statute law on this question. It is manifest
that if guardians or other persons having charge of
infants are permitted, in their discretion, to con-
tract debts for the support and maintenance of their
wards and subject their real estate to the payment of such
debts, the wise discretion which has been lodged in the
chancellor for their protection will be greatly abridged; as
having once contracted a debt for a ward for which the guar-
dian is personally bound, he will be no longer controlled by
disinterested solicitude for the welfare of his ward, but large-
ly by the temptation of personal interest and personal ad-
vantage, and the effect of such a construction is to give guar-

dians a dangerous discretion and power over the property of infants intrusted to their protection.

In the case of Jarret v. Andrews, 7 Bush, 313, this court held that the guardian had the right to subject the real estate of the ward to the payment of moneys which he had expended for her benefit for necessary clothing, but the circumstances of that case were peculiar.   At the time of the expenditure the country was convulsed with civil war; the courts of the county in which the ward's estate was situated were suspended, and by reason of this suspension no order of the chancellor to dispose of her real estate could be procured; and under those hard conditions, as said by the court, "there were but two courses to pursue,—either to allow the ward to go naked, unclothed and unfed, or furnish the money to procure these necessities," and the court decreed a sale of the real estate to refund the money expended by the guardian.

But the opinion of the court in that case is in conflict with the plain provisions of the statute, and with repeated adjudications of this court in passing upon this question both before and subsequently to the date of that opinion, and it is now overruled.   But the case at bar does not present the strong reasons for allowing the claim of the guardian which appealed to the court in the case just cited.   Here the stepfather, without agreement as to support, took the infant into his family, treated her as his own child, had the benefit of her services without demanding or receiving any payment for her support at the time it was given.

It is the duty of a father, whether he is guardian or not to educate and support his children out of his own resources,

and persons other than a father, standing in *loco parentis* to the child, may acquire a father's liability for its support and education. And where a stepfather, though not bound to support his stepchildren,, or they to render him service, maintains them and accepts such service, they will be regarded as having dealt with each other as parent and child; and in the absence of express agreement the stepfather can claim no compensation for their support. (See Hussey v. Roundtree, Busb., N. C. 110, Brown's Appeal, 112 Pa. St., 18; Barnes v. Ward, Busb., N. C., 93; Chapline v. Moore, 7 Monroe, 171, etc.)

As to the item of $125 for burial expenses and the one of $250 for physician's bill, which was incurred in the last illness of the ward, and both of which were paid by appellant subsequently to the death of the infant, we do not think they stand upon the same footing as the other charges. Unquestionably the physician who attended this infant and the undertaker who buried her would have had a right to assert their claims against the estate of the infant and to have subjected it to the payment of these claims after her death, and appellant having paid these debts after the death of the ward, he is entitled to be reimbursed for these items by a sale of the real estate, and it is so adjudged.

For reasons indicated this cause is reversed and remanded for further proceedings consistent herewith.