## Brock v. Commonwealth.

(Decided January 16, 1925.)

## Appeal from Leslie Circuit Court.

Parent and Child—No Conviction for Child Desertion, where Parent Performed Duties Willingly and in Good Faith.—Purpose of Ky. Stats., section 331i-1, denouncing "child desertion," is to punish fixed determination of parent to absolutely refuse to discharge natural duties enumerated, as evidenced by desertion or abandonment and refusal to perform them, and hence where father performed his duties willingly and in good faith, but because of extreme poverty, large number of children, and deficient business ability, failed to properly support children, conviction will not be upheld.

J. B. MINIARD for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The grand jury of Leslie county on June 7, 1924, returned an indictment against appellant, Henry Brock, charging him with the offense denounced in section 331i-1 of the 1922 edition of Carroll's Kentucky Statutes, commonly known as "Child Desertion." Upon his trial, he was convicted and sentenced to serve a term of one year in the penitentiary. The court declined to set aside the verdict upon a motion made for that purpose and pronounced judgment thereon, to reverse which this appeal is prosecuted.

Under the statute the offense consists in leaving, deserting or abandoning one's child under the age of 16 years while the child or children are in destitute or indigent circumstances without making proper provision for board, clothing, education, etc., suitable to the position and station in life of the parent of the child or children. Necessarily, it was not intended by the legislature to include a case where the parent proceeded against continued to reside in the home provided for himself and family, including his children, and who made an honest and *bona fide* effort to provide himself with sufficient means for taking care of his family, including his children, in the manner pointed out in the statute, notwithstanding he may have partially failed because of poverty, inability to procure work, inherent incapacity or other

conditions and circumstances not under his control and to which he did not contribute.

There is practically no difference in the testimony introduced by the Commonwealth on the trial and that furnished by defendant and his witnesses. In substance, it was, that defendant's family consisted of himself, his wife and seven infant children under the age of 16 years. He was very poor financially and owned no home. In the early spring of 1924 he resided in Hazard, Kentucky, where he sustained the misfortune of the loss by fire of most if not all of his meager personal belongings in the way of household goods and furniture. Afterwards he moved to Leslie county and rented a small cottage with a few acres of ground around it and planted a crop of corn, beans and other vegetables on something more than an acre of the rented land. He sought and obtained work at various places in the surrounding territory, and on occasions obtained jobs as much as three miles or more from his home. He would take in payment for his services, corn, bacon and other articles of food for his family and would carry them to his home where they would be consumed. At other times he would be paid money and with it bought such necessaries as the family absolutely needed in the way of coffee, lard, flour and other provisions. While working away from home he would remain at the place where he was employed for days at a time, and would not return home for exceeding two nights in the week; but no witness proves that he did not use the proceeds of his labor in the manner indicated. In fact it was proven by the Commonwealth's witnesses, supplemented by those of the defendant, that he not only used the proceeds of his labor, as we have stated, but that he spent $40.00 in money which he had managed to accumulate and save before the fire in providing for his wife and children.

It is true that the proof showed that after the fire, and while they were living in Leslie county, his little mountain cottage was but meagerly furnished and that the beds upon which the members of the family slept consisted mainly in springs and quilts without mattresses. But there is nothing in the testimony to show directly or remotely a settled determination or fixed purpose on the part of the defendant to either permanently or temporarily abandon his legal duty as either husband or father. On the contrary, it is abundantly established that he, to the extent of his business and physical limitations, heroic-

ally fought the wolf of poverty and did or sought to do what he could in the light of his ability and capacity to keep the skeleton of starvation from his door. Neither poverty nor inherent deficiencies have yet been made crimes in this country, and what defendant, therefore, needed was sympathy, encouragement and help, rather than an indictment or prosecution.

It may be (though the evidence does not disclose it) that he was not so successful in procuring work and earning wages as one of more intelligence and business resourcefulness might have been; but the statute was not intended to correct such deficiencies, but rather to punish an intentional relinquishment of parental duties evidenced by leaving, deserting or abandoning his children without effort to make the required provisions. Unfortunately for society, there are great numbers of its members who are not sufficiently acute in this grasping world to be able to acquire their share of its goods, and who are therefore content to live a resigned, narrow and plodding life and yet, at the same time, be perfectly willing to do what they can, as measured by the scope of their comprehension, to discharge their conceived duties of citizenship; and if the statute should apply to such persons, the penitentiaries would have to be enlarged and the sovereignty would indeed become a parent and a protector of a large per cent of its population. Therefore, we again repeat that it was the purpose of the legislature to punish a fixed determination on the part of the parent to absolutely refuse to discharge the natural duties enumerated therein as he evidenced by his desertion or abandonment and his refusal to perform them.

The text in 29 Cyc. 1677, on the point under consideration, says: "In order to warrant a conviction under such a statute, all the elements of the offense must be made out. There must be an intention to wholly abandon the child and entirely sever, so far as possible, the parental relation and to throw off all obligations growing out of the same." As to what particular facts are necessary to prove the elements as set out in the text, we are not now concerned, although they are stated in subsequent portions of it. It is sufficient to say that in this case there was an utter failure to prove either desertion or abandonment such as contemplated by the statute; or to prove severance of any "parental relations" or the throwing off of "all obligations growing out of the same." See also Gay v. State, 105 Ga. 599, 31 S. E. 569,

70 Am. St. Rep. 68, and Commonwealth v. Donovan, 187 Ky. 779. In the latter case this court, in its opinion, quoting from the second series of "Words and Phrases," volume 1, page 4, said: "Abandonment as a criminal offense contains two essential ingredients, separation from the child and failure to supply its needs; mere absence from one's child does not constitute the offense, but it begins and continues as long as there is a failure on the part of the father to perform his parental duty and consequent dependence of his child," which follows and adopts the ingredients of the offense as stated in Cyc. *supra*.

It may be that defendant, on account of his narrow vision and limited comprehension of parental duties, growing out of the obscurity of his rearing and his surrounding environments, was to some extent neglectful of his parental duties and did not perform them to the extreme measure of his maximum ability; but that alone, if true, was but a misfortune and not a crime. Therefore, as long as a parent is performing his duties willingly and constantly in a manner tending to convince that it is his purpose to do so, he is not subject to punishment under the statute, because forsooth on account of his poverty, his deficient business ability, plus the number of children under his care, he fell short of accomplishing what might have been done by better foresight and management.

It results, therefore, that the court erred in overruling the motion for a peremptory instruction and the judgment is reversed with directions to grant a new trial and for proceedings consistent with this opinion.