## Commonwealth v. Kirk.

(Decided January 29, 1926.)

### Appeal from Boyd Circuit Court.

1. Statutes—Applicability and Scope Determined by Legislature's Intent and Purpose as Gathered from Language.—Applicability and scope of statute must be determined by ascertaining legislature's intent and purpose in enacting it as gathered from its language.

2. Statutes—Intent and Purpose in Enacting Statute May be Arrived at by Considering Object and Other Statutes in Existence at Time. —In arriving at the legislative intent and purpose in enacting a statute, the object to be accomplished and other statutes in existence at the time and bearing on the principal question for determination may be considered.

3. Adoption—Status of Adopted Infant and Parent Governed by Statute of Forum Authorizing Adoption.—Status of adopted infant

and parent toward each other is governed by statute of forum creating right of adoption.

4. Adoption—Statute Making Abandonment by "Parent" of Minor Child a Felony Held Applicable to Abandonment of Adopted Child.—Ky. Stats., section 331i-1, making abandonment by a "parent" of a minor child in destitute circumstances a felony, applies to abandonment of a child adopted under section 2072; legislature being presumed to have known existing law, and intended word "parent" to include both adopting and natural parents, whose obligations to child are same.

5. Adoption—Adopting Parent Liable for Necessaries, and Subject to Civil Remedies Against Natural Parent to Enforce Proper Maintenance.—An adopting parent, under Ky. Stats., section 2072, is liable for necessaries furnished to the adopted child, and subject to all civil remedies against a natural parent to enforce proper maintenance.

6. Adoption—Indictment for Abandoning Adopted Minor Child Held Sufficient, Though Not Alleging Statute Under which Adopted.—Indictment under Ky. Stats., section 331i-1, for abandoning adopted minor child in destitute circumstances, held sufficient, though not alleging statute under which child was adopted, where it alleged that defendant adopted the "infant," which can only be done under section 2072, not that child was adopted only as an heir under section 2071.

7. Adoption—Indictment for Abandoning Minor Adopted Child Sufficient, though Not Setting out Judgment of Adoption.—Indictment for abandoning adopted minor child in destitute circumstances, held sufficient, though not setting forth the judgment by which the child was adopted, where the fact of adoption was alleged.

FRANK E. DAUGHERTY, Attorney General, and WATT. M. PRICHARD for appellant.

JNO. F. COLDIRON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Section 331i-1 of our present statutes reads: "The parent of any child or children residing in this Commonwealth who shall leave, desert or abandon said child or children under the age of sixteen years, leaving said child or children in destitute or indigent circumstances and without making proper provision for the board, clothing, education and proper care of said child or children in a manner suitable to the condition and station in life of said parent and said child and children shall be guilty of a felony and upon conviction thereof shall be punished by confinement in the penitentiary for not less than one

year nor more than five years in the discretion of the court or jury trying the case.''

The grand jury of Boyd county returned an indictment against appellee and defendant below, Floyd Kirk, charging him with violating that statute. The indictment was in the language of the statute and its sufficiency, if the abandoned child was the natural one of defendant, is not questioned, but it alleged the name of the child as ''Lillian Minor, age 8 years, said Lillian Minor having been adopted by said Floyd Kirk by proper orders of the Greenup circuit court of Greenup county, Kentucky.'' Defendant demurred to the indictment and the court sustained it, expressly upon the ground that a proper construction of the statute did not apply to or include the abandonment and desertion of adopted children, and the Commonwealth disputing the accuracy of that interpretation prosecutes this appeal from the judgment.

The question presented is, of course, to be determined from the ascertainment of the intent and purpose of the legislature in enacting the statute as gathered from its language, and in arriving at that intent and purpose the object to be accomplished may be considered, and other statutes in existence at the time of its enactment and having a bearing upon the principal question for determination, may also be considered. Such rules for the interpretation of statutes are fundamental and are universally applied and adopted by courts, and for that reason we deem it unnecessary to cite supporting cases.

Evidently the statute was enacted for the benefit and protection of an infant who was in charge and custody of a person designated in the statute as ''parent'' and whose legal duty under the law was to perform the obligations for a refusal to do which the punishment was provided, and which punishment itself was a means by which the performance of those obligations might be enforced. At the time of the enactment of the statute under which defendant was indicted, sections 2071 and 2072 of our statutes, the one prescribing for the adoption of an heir and the other for the adoption of a child, were each in existence. The law with reference to the adoption of children by one who is not their natural father was unknown to the English common law, and has its source in the Roman law, but most if not all the states have provided therefor by statute, and the status of the adopted infant toward the adopting parent, as well as the latter

toward the child, is necessarily governed by the statute of the forum creating the right of adoption. Section 2071, *supra,* as we have already stated, provides only for the adoption of a person for the purpose of ''making him capable of inheriting as heir-at-law of such petitioner,'' the adopter; and the adopted person under that section need not be an infant but may be of any age, and the adopter thereunder obtains no right to the control of the adopted heir, nor is there any obligation to support assumed by the adopter under that section, even where the adopted one is an infant. But section 2072 says: ''Said court shall have authority, by consent of the parents, or either of them, if one be dead, to give the petitioner the parental control of such adopted person, if an infant; and said petitioner shall be under the *same responsibilities* as if the person so adopted were his own child.'' (Our italics.)

Mr. Tiffany in the recent third edition of his excellent work on Domestic Relations, on page 314, in stating the legal status of the parties to an adopting proceeding, says: ''Where the artificial relation of parent and child is created by adoption under the statutes, the relation will, by the express provisions of most of the statutes, and even independently of such express provisions, give rise to substantially the same rights, duties, and liablities as arise out of the natural relation. The law cannot, and does not purport to, do the work of nature, and create one a child who by nature is a stranger. But it can and does fix the status of the adoptive child to the adoptive parent as *substantially the same* as the status of a natural child. By the act of adoption, the child becomes, *in a legal sense,* the child of the adoptive parent. The general effect of adoption, therefore, is, with few exceptions, to place the parties in the *legal relation* of parent and child, *with all the legal consequences.* The law declares the status, and from the status, as a necessary consequence, spring the ordinary rights, duties, and liabilities which arise out of the *same status* created by nature.'' (Our italics.) Following that excerpt and on page 315 he points out that some statutes only provide for the adoption of an heir and in such cases the above status is not created; but he furthermore says, that where by the proceeding such status is created the adoptive parent is entitled to, not only the custody but the services and earnings of the adopted child ''and is bound to support and maintain such child.'' Many cases from an

equal number of courts are cited in the notes to the text, and to note 6, to that part of the text saying that such adoption gives "rise to substantially the same rights, duties and liabilities as arise out of the natural relation," reference is made to pages 321 and 339 of the same work, and which deals with the duties of parents to maintain their children and their being amenable under the law both civil and criminal for a violation of those duties; thereby indicating that the duties in the respects indicated are the same as to an adopting parent as they are with reference to a natural one.

Mr. Schouler in the late sixth edition of his work on Marriage, Divorce, Separation and Domestic Relations, volume 1, section 726, defines the status of an adopted child and an adopting parent in substantially the same terms as does Mr. Tiffany, and he, as well as the first author mentioned, states that when such an adoption has been made the natural parent loses the right of the child's control as well as the obligation to maintain it, since both the right of control and the duty to maintain have been assumed by the adopting parent who with respect thereto occupies the shoes of the natural parent.

We have been cited to no case from this court, nor have we been able to find one militating against the definition of the status as given by the learned authors referred to. The cases of Power v. Hafley, 85 Ky. 671; Atchison v. Atchison, 89 Ky. 488; Lanferman v. Vanzile, 150 Ky. 751; Villier v. Watson, 168 Ky. 631, and others referred to in those opinions, deal exclusively with questions involving rights of inheritance from both the adopted parent and the adopted child and did not have before them the questions of custody, maintenance, etc., involved in this case and growing out of an adoption under the provisions of section 2072, *supra*.

We, therefore, see that there may be two classes of parents in the eyes of the law with reference to the custody of infant children and the rights and duties of the parent toward the child; one being a legitimate natural parent and the other a voluntary adopting parent, the duties of both, as we have seen, being the same with reference to the rights and obligations growing out of the relation. Since, therefore, it was the purpose of section 331i-1 to enforce a compliance with those obligations (or the ones mentioned therein) by the one occupying the status of parent so that the innocent child who had no choice in the assumption of the relation by

the one upon whom those duties were imposed, might receive the benefit of a compliance therewith, it is our conclusion that the legislature intended to punish such one occupying the relation of parent, either natural or assumed under the adopting statute when it enacted the one under which defendant was indicted. In arriving at that conclusion we are not only authorized to presume, but we do presume, that the legislature knew the law as above outlined when it enacted the statute now being considered, and that when it used the word "parent" therein it meant to include both classes of parents to which we have referred, since each of them is, in the eyes of the law, a legal parent to the children in their custody, and that the artificial but legally created parent assumed the same obligations to his adopted child that the law imposed upon a legitimate natural one. There is no room for any other interpretation, even if we should apply the rule of strict construction, for there is nothing in the statute remotely indicating that it was the intention of the legislature to confine its provisions to only natural parents. It is the law everywhere that an adopting parent under provisions similar to those contained in section 2072 of our statutes, is liable for necessaries to the adopted infant and is subject to all the civil remedies allowed against a natural parent to enforce proper maintenance; and, since the criminal statute under consideration is only an additional means for the enforcement of such duties, we fail to detect any reason why its provisions would not apply to an adopting parent the same as his liability under civil remedies.

Nor do the views above expressed conflict with our decision in the case of Commonwealth v. Ray, 196 Ky. 203. The child there involved was an illegitimate one, and it had not been legitimatized by intermarriage between the father and the mother, which, if the latter had been done, we are confident the opinion would have been different. The law does not impose the duty on the putative father to support his illigitimate offspring (except that furnished by bastardy proceedings) and there being no such duty a statute directed toward enforcing it would not apply to one upon whose shoulders no such obligations rested. The general rule relieving a putative father from such obligations towards his illegitimate offspring is stated in 7 C. J. 955, paragraph 31, thus: "At common law the putative father is under no legal liability to support his illegitimate offspring. He is, how-

ever, under a natural and moral duty to render such support; and when legitimation takes place, all the reciprocal responsibility and duties between a father and a legitimate child obtain between him and such child.'' In the notes to the first proposition the case of Mercer v. Mercer, 87 Ky. 30, with many others, is cited, and in support of the second proposition the case of Best v. House, 113 S. W. (Ky.) 849, is cited, and those cases sustain the text and support the opinion in the Ray case, *supra,* and likewise support our conclusion herein expressed that the opinion therein would have been different had the defendant, Ray, intermarried with the infant's mother.

Since, therefore, reason, justice, common sense and what we conceive to be unanswerable logic support the conclusions herein reached, it results that the court was in error in sustaining the demurrer to the indictment upon the ground stated in his opinion.

But it is insisted that the demurrer was properly sustained because the indictment did not allege the section under which the adoption was made so as to indicate that it imposed the duty upon defendant enumerated in the criminal statute involved. There might be some merit in this contention if the allegation in the indictment was insufficient to show under what section the adoption was had. It did not allege that the infant was adopted only as an heir, in which case there is in reality no adoption of the person of the infant, but the indictment does allege that defendant *adopted* the *infant,* and which can only be done under section 2072. Neither do we think the indictment insufficient, because it did not set forth the judgment by which the child was adopted. The fact of adoption was alleged and a plea of not guilty will put in issue that fact, and if upon trial it is found that the adoption was not legally made the defendant will obtain the benefit of it. To accept the contention of defendant's counsel would not only require the judgment to be copied in the indictment, but likewise require all of the adopting proceedings also to be copied, and which we are convinced is not necessary.

Wherefore, the judgment is reversed, with directions to set it aside and to overrule the demurrer, and for proceedings consistent with this opinion.