## Lickliter v. Commonwealth.

(Decided May 9, 1933.)

C. R. LUKER for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellant, John Lickliter, seeks a reversal of a judgment sentencing him to imprisonment for five years for having killed Claude Bowling on Sunday evening, August 28, 1932. He was indicted jointly with his brother, Roy, and sister, Alice.

We state the substance of the evidence presented by the commonwealth. The deceased, who was about 22 years old, had been keeping company with Alice Lickliter, who was about 17 years of age. The families lived a mile or so apart, and all were upon friendly terms. Early Saturday night, Alice and her sister, Annie, had gone to the home of the deceased near London in company with two young men and were intoxicated. By a subterfuge, the boys got the girls out of the automobile and then went off and left them. Shortly thereafter they left Bowling's home with him. About eleven o'clock Sunday morning Alice came back, and his mother let her come in to wash her face and comb her hair. In answer to her inquiry, Mrs. Bowling told her that Claude had gone up the road, and she went in that direction. About five o'clock that afternoon he and the girl got a drink of water at a house about three-quarters of a mile from his home. Claude came home and ate his supper, and his mother said he took some food out of the house, going in the direction of the barn. About half past seven he left, and in a few minutes some shooting was heard in the direction he had gone. His mother and brother went there immediately, and found him dead in the road about 200 yards from his home. His pistol was in his right front pocket and had not been fired. John Creech testified that that evening he had gone by the Lickliter home, and the girl's parents asked him to go help hunt for their daughter who had been gone a day or two. The defendant was present part of the time, but the witness did not know whether he heard this conversation. News had been brought that Claude had been killed and may have committed suicide. Later on when Creech came back to the Lickliter home the defendant suggested that they might be of some help and that they should go over to the Bowling home. He said nothing whatever about having shot or killed Claude Bowling a few minutes before. On the way they met up with several men who expressed the opinion that Claude could not have killed himself, and then the defendant turned and went back home. There was evidence of the defendant and his

brother, Roy, having been seen in different places, apparently going toward the point where the body was found, but, as we understand the record, neither was shown to have been within a half mile of it. One witness said that after the shooting he saw the defendant and his brother, Roy, and his sister, Alice, not far away. Charles Buck testified that about 4:30 that afternoon at the drug store the defendant said, "He liked to have had to put a man off the night before." He mentioned no names and made no explanation of his remark. A colored woman, who lived across the road or street from the Lickliters, stated that about half past six Sunday evening the defendant left home saying that he was going to get his sister, and asked Roy to go along. Roy said he was not going because "They were to stay in the woods until morning and get married;" and John said, "If you are not going I will go; she is my sister and she is not going to stay in the woods; I will go and get her if it takes death." A deputy sheriff testified to finding the body in the road. Bowling had been shot once in the breast near the heart and had a little skinned place by his eye. His shirt was powder burned. A witness heard only one shot fired, and another witness heard two.

The court overruled the motion for a peremptory instruction to find the defendant not guilty. Of this the appellant now complains. He did not rest his case upon the commonwealth's evidence, which was obviously insufficient to connect the accused with the crime, but proceeded to introduce his defense, which admitted the killing and sought to justify it. So the motion and the case must now be considered on the entire record.

The proof of the defendant is stated in substance. When Annie Lickliter, the older sister, came home Sunday afternoon and found that Alice was not there, she went to the home of the deceased looking for her. Not finding her there, she came back home and told her parents that Alice had been with Claude Bowling the night before. It appears that the folks at home thought Alice had stayed with her sister that night. It was then getting dark, and the father started to go to find his daughter, but felt that he could not see well enough, and asked his son, John, the defendant, to go and find her. Roy, who had been working that day, was chang-

ing his clothes, and said he was coming on up town. The defendant denied the testimony of the colored woman that when Roy had refused to go with him he said he would get his sister "if it takes death." In this denial he is corroborated by his father, mother, and brother. The defendant went out the road and came suddenly upon the deceased and his sister. She was crying, and he told her their mother was sick and she was needed at home; whereupon Bowling shoved her over in some briers and bushes and against the fence, cursed him, and said she was not going. He also added that "When they find you all the undertaker will find you laying there with your G—— d—— brains shot out," and made for his pistol. He grabbed him and said: "Claude, let's not have any trouble; I thought we were friends." Bowling continued cursing and said he was going to kill him, and when he got his pistol about half way out of his pocket he shot him. His efforts to defend himself and to pacify Bowling are further detailed. The sister fully corroborates the defendant, and there is no contradiction or any evidence tending to contradict their testimony. The defendant had been in the habit of carrying a pistol. Afterward he and his sister went home and told their father what had happened. The defendant admits having started with Creech to go to Bowling's home, and that he did not tell him what had happened. On the way he changed his mind and returned home. He had not heard of any suggestion of suicide.

The sisters testified that Saturday night, when they went to Bowling's home with the other boys, Bowling compelled them to get out of the machine, and then the boys left. Bowling, who was drinking, forced them to remain with him around on the streets of London all that night. The next morning, when Annie went to her place of work and where she stayed, Bowling promised to take Alice home. Instead of doing so, Alice testified that he threatened to kill her if she tried to go home. He took her into the woods, where they remained until about 11 o'clock, and then went to his home. Testimony of what occurred during Sunday between Bowling and the girl was heard by the judge and held inadmissible.

The question whether the verdict is flagrantly against the evidence is a close one, but, inasmuch as

errors in the trial require a reversal of the judgment, we have concluded it well to express no opinion upon the point.

In his opening statement, the commonwealth's attorney said that he proposed to show by the jailer that some time after Alice Lickliter was put in jail a letter was found written by her to a negro man in a lower cell, in which she told certain things about the homicide, and that the jailer had found other letters of the girl on the person and in the cell of the colored man, and that they would be offered in evidence. The attorney for the defendant objected to the statement; moved the court to exclude it and to set aside the swearing of the jury and continue the case. The court advised the jury that the defendant, who alone was on trial, was not bound by anything that Alice Lickliter had written, if she had written anything, about the killing, and that such statements or writings could not be competent as substantive evidence, but only admissible provided Alice Lickliter should testify as a witness and be asked about the letters, and then if she denied them, it might be competent to prove them in contradiction. The defendant's motion was renewed at the close of the commonwealth's evidence and also at the close of all the evidence. At that time the court addressing the jury referred to his previous admonition, and stated that, inasmuch as Alice Lickliter had not been asked concerning the letters and no effort had been made to contradict her testimony in the way indicated, the jury should disregard all of the statements of the attorney in respect to them, and admonished the jury that those statements were improper and incompetent and should not have been made and were excluded.

The sister was not on trial. She was the only witness to the material facts. The possibility of the letters becoming admissible even for the purpose of impeaching her as a prospective witness was remote. Certainly, that expected contingency did not justify the statement indicating that they would be produced as substantive evidence against the defendant. No attempt was made during the course of the trial to make such letters admissible by way of contradicting the sister as a witness. It was not suggested during her examination that she had made any contradictory statements. It is difficult not to believe that the statement

was made by the prosecuting officer deliberately in order to bolster up a weak case by creating a vicious prejudice against the defendant and his sister. The statement that a young white girl was writing confidential letters to a negro prisoner could have had no other effect, and it seems to us could have been made for no other purpose.

The only legitimate purpose of an opening statement is so to explain to the jury the issue they are to try that they may understand the bearing of the evidence to be introduced. There is no occasion and no excuse for attempting to influence the jury in advance by improper statements as to evidence which counsel knows he cannot prove or will not be permitted to introduce. It has often been stated that it is the duty of a prosecuting attorney to see that justice is done and nothing more. That duty should not be forgotten in an excess of zeal or the eager quest for victory in his case. The people of the state desire merely to ascertain beyond a reasonable doubt that the accused is guilty of the crime charged, and do not countenance any unfairness upon the part of their representatives in court.

In admonishing the jury at the end of the trial not to regard the statement, the court did all that he could do short of sustaining the motion to dismiss the jury from a consideration of the case. We are satisfied that the poison of prejudice with which the minds of the jury had been inoculated in the beginning of the trial could not be and was not altogether removed. Perhaps it would be different if the case were not so close, but the prejudicial effect of the conduct of the prosecuting officer, it seems to us, cannot be doubted.

It was error to permit the deceased's mother to tell of the intoxicated condition of the defendant's sisters at her home on the night preceding the killing.

The Attorney General concedes that the statement of the defendant at the drug store in the afternoon was irrelevant, but submits that it was not prejudicial. It doubtless afforded the basis for some prejudicial argument, but in itself would not authorize a reversal of the judgment. Upon another trial it should be omitted.

The evidence of several witnesses as to the condition of the deceased's pistol when they examined it

several hours after the discovery of the body and in possession of his family and that it had apparently not been fired recently was incompetent, but harmless, in the light of the fact that the accused did not claim the deceased had shot at him.

We think so much of the testimony of Alice Lickliter as to what occurred during the day when she and the deceased were together in the woods as tends to show the exercise of power over her, or tyrannical treatment, or threats made by him was competent as throwing light upon his state of mind and attitude at the time he met up with the defendant and was killed, although the details of their relations need not be gone into.

We find no fault with the indictment or the instructions which are questioned by the appellant.

For the reasons given, the judgment is reversed.