## Gee v. Commonwealth.

(Decided April 28, 1936.)

H. R. WILHOIT for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Reversing.

L. H. Gee appeals from a one-year sentence for child desertion.

The facts as testified to by Mrs. Gee are: Of her marriage with appellant ten children were born, seven of whom are living, and four of whom are under sixteen years of age. Appellant left her about five years ago, and his last contribution to the support of the children was $40 given to her on May 9, 1935. Neither she nor her children have any property or income of any kind. She has no trade or profession, and washes, scrubs, and does any work she can get to buy clothes and something to eat for the children. On the other

hand, appellant testified as follows: He had been separated from his wife five years. The reason he had not paid anything to her for the support of the children since the 11th day of May was that he had not been able to make anything. Since March 1st, he had been under the care of Dr. Humphrey, who treated him until September, when he went to Dr. Goodman at Ashland. Dr. Humphrey made him an X-ray which had been filed in court. His business was selling farm machinery. He organized the Ohio Valley Implement Company the first of the year, and was laid off last September on account of his health. He received a commission of 5 per cent. on what he sold. His earnings had not been enough to pay his expenses, doctors' bills, and medicine. He referred to gasoline and the expense of running a car, etc. The doctor told him in March to quit driving, but since then he had gone out and tried to work some. Most of the time he had to give part of his commission to get some one to drive him. His income had been no more than enough to pay expenses. On cross-examination he stated that he had been driven by Bob Hayden and Miss Clark. He lived in the back end of the display room with her and her sister and mother and a child. He knew a man by the name of Tyree, who was in the grocery business. The account was carried in his name, but was paid by the women. It was done that way because he knew Tyree and they didn't. He wrote the last check to pay the account. It amounted to twenty some dollars. The money came out of a pension check to Miss Clark's mother. He boarded with them. He had not paid them any board since May, but prior to that time paid them $10. He went a few times to the store to buy goods, but not very many times. All of the groceries were charged to him. He had gotten other things on the check of the Ohio Valley Implement Company, composed of V. A. Clark, V. L. Clark, and himself. V. A. Clark is the only one who has any money. He formerly roomed with her in Ashland. When his son was with them, he paid about $15 a month for their board. He denied stating to Mr. and Mrs. Everman that he was doing fine in his business and that it paid him $100 to $150 a month.

Dr. G. B. O'Roark, who examined appellant the previous day, found him suffering with nervous indi-

gestion, and either a dilated or enlarged heart. That condition had been going on for a considerable time. From his diagnosis of appellant's trouble, he was of the opinion that he could not earn a livelihood "at labor," and could not do it by driving an automobile and hunting up prospects to sell farm machinery to. There was "always a danger of nervous collapse in those conditions." He did not know what appellant's condition was on May 11th or in June, July, or August, or up until December 12th. He did not know anything "back of yesterday." His condition would show that during those periods it would be unsafe for him to do strenuous work, but he did not consider just sitting by the driver of an automobile as "strenuous work." Where a man in charge of an implement plant or agency rode out in an automobile with a driver merely to talk to his prospects, it would not "in an ordinary way" have a tendency to exhaust him. C. J. McClelland, who drove appellant several times, testified that appellant while talking with prospects became exhausted very easily. Appellant's affidavit was read as the depositions of the absent witnesses, Dr. T. D. Goodman, Dr. P. H. Humphrey, and Dr. H. B. Fraley. If present, Dr. Goodman would testify that he had been treating appellant for several months, that appellant was suffering from an enlarged heart, low blood pressure, subnormal temperature, and a general condition of neurasthenia, and was unable to work at any gainful occupation and should be in bed all the time. If present, Dr. P. H. Humphrey would testify that he had been treating appellant, had made an X-ray picture of him, and found him suffering from an enlarged and dilated heart, low blood pressure, subnormal temperature, general neurasthenia, and a deterioration of the nerve centers. Appellant should have a long period in bed with perfect quiet and regular treatment, and he was not physically or mentally able to earn a livelihood or work at any gainful occupation. If present, Dr. H. B. Fraley would testify to the same effect.

In rebuttal, Mrs. Chloe Everman and her husband, James N. Everman, who lived only a short distance from appellant, testified that in the preceding July they were talking with appellant, who stated that his business was increasing and he was in a position to make

$100 to $150 a month. As before stated, appellant denied the conversation with the Evermans.

It is first insisted that the demurrer to the indictment should have been sustained on the ground that it did not allege that the children were the legitimate children of appellant. It is true that the word "children" in the statute (Ky. Stats., sec. 331i-1) does not include illegitimate children. Commonwealth v. Ray, 196 Ky. 203, 244 S. W. 415. But when it is alleged, as in this case, that the children are the children of the accused, the presumption is that they are his legitimate children, and the burden is on him to show the contrary.

The next ground is that appellant was entitled to a peremptory instruction for the reason that the commonwealth failed to prove that the children resided in Kentucky. The argument is that the only evidence on the question was that given by Mrs. Gee, the mother of the children, who stated that at the time appellant left her home some five years before she testified, she lived in Grayson, Carter county, Ky., "here back of Fourth Street, here in town." We find, however, that during the course of the evidence Mrs. Gee was asked, "Where do you live now?" and answered: "I live in Mr. Tom Yates' house down in College addition." On the question of venue we have adopted a liberal rule, and slight evidence is sufficient to sustain the venue of the county in which the indictment is found. Commonwealth v. Duvall, 220 Ky. 771, 295 S. W. 1047. Venue, like any other fact, may be established from proof of facts and circumstances from which it may be inferred. Warman v. Commonwealth, 193 Ky. 701, 237 S. W. 378. Here the indictment alleged that the crime was committed in Carter county, Ky. The trial took place at Grayson, in that county. It was shown that the children lived with their mother, Mrs. Gee. She testified that she lived in Grayson when appellant left, and her subsequent statement that she lived down in College addition brought to the attention of the jurors a well-known place in the town of Grayson from which the jury might infer that the desertion occurred in Carter county, Ky. House v. Commonwealth, 251 Ky. 834, 65 S. W. (2d) 997. We think this evidence was sufficient.

There is the further contention that the evidence clearly showed that appellant was prevented by illness and other circumstances from supporting the children. Attention is called to appellant's evidence as to his inability to work and make anything above his expenses, and to the testimony of the physicians as to his inability to work. But this is not all the evidence. It was shown that groceries for himself and the members of the family with whom he lived were charged to and paid by him, and that he announced to his friends that his business was improving, and that he could make $100 to $150 a month. In view of this evidence, and the further fact that appellant's business was solely that of a solicitor, we think it was a question for the jury whether he was prevented by illness or other circumstances from supporting the children, and the question was properly submitted by the given instruction.

Instruction No. 1 is attacked on the ground that it authorized a conviction of appellant if he left the children, or any one of them, in destitute or indigent circumstances without making provision for their proper education, when one of the children was only five years of age. It is true that we held in Webb v. Commonwealth, 237 Ky. 141, 35 S. W. (2d) 14, that an instruction authorizing a conviction for child desertion, if the father failed to provide for the education of a child only two and one-half years old at the time of the trial, was erroneous; but in that case only one child was deserted, and with respect to their education there is a wide difference between a child five years of age, and one two and one-half years of age. Moreover, we are not inclined to the view that the jury were misled by the instruction and found appellant guilty on the sole ground that he failed to provide for the education of the five year old child. We therefore conclude that the instruction is not prejudicial in the respect indicated.

Lastly, it is claimed that the commonwealth not only failed to prove that the children were left in destitute or indigent circumstances, but did prove that they were being cared for by their mother, and for that reason it is argued that the evidence was not sufficient to take the case to the jury, or to sustain the verdict, or at least the court should have instructed the jury

that if they believed from the evidence that the mother of the children had, as the statute requires, provided for their board, clothing, education, and proper care, through her own unaided efforts, and with the money which she had earned as the result of her own labor, they should find defendant not guilty. It is true that there must be proof that the children were left in destitute or indigent circumstances. West v. Commonwealth, 194 Ky. 536, 240 S. W. 52; and that a child left with and properly cared for by the mother is not left by the father in destitute or indigent circumstances within the child desertion statute, Webb v. Commonwealth, supra. In this case, however, it was clearly shown that the children had no property or income of any kind, and that they were supported solely by the mother, who had no property of any kind and did not have a regular job. The statute clearly contemplates that the children shall be properly cared for in a manner suitable to their and their parents' condition and station in life (section 331i-1, Kentucky Statutes), and it can hardly be said as a matter of law that the requirements of the statute have been met where four children, apparently accustomed to better things, have no other means of support than the meager and uncertain earnings of their mother, derived solely from washing and scrubbing for others; or that the finding of the jury that they were left in destitute or indigent circumstances was flagrantly against the evidence. The case turns on the sufficiency of the mother's earnings to provide for the children in the manner required by the statute, and there being evidence that the children were properly cared for, we think the question should have been submitted to the jury by an appropriate instruction, as held in Webb v. Commonwealth, supra.

Judgment reversed, and cause remanded for a new trial in conformity with this opinion.