## Brinson v. Commonwealth.

April 27, 1948.

Sandusky & Krueger for appellant.

A. E. Funk, Attorney General, and Squire N. Williams, Jr., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

By a true bill returned by the grand jury on September 16, 1947, appellant was charged with the crime of deserting or abandoning his infant children, leaving

them in a destitute condition without making proper provision for their board, clothing, etc., as denounced by Sec. 435.240, KRS, which carries a penalty of from one to five years imprisonment. On his trial on October 16, 1947, he was found guilty, the penalty being fixed at the maximum.

In support of a motion for new trial, which was overruled, appellant set up five or more grounds, however in brief appellant's counsel only discussed one ground for reversal, that the verdict is not supported by the evidence.

The testimony of the wife in the main, corroborated by her mother, in part, was to the effect that appellant in July of 1947 left his home and went to Indiana "or somewhere" leaving his four children ranging in ages from three to eleven years, without food or clothing, and the wife was compelled to take the children to her mother's home for support. She testified that after his return from Cincinnati as it developed, where he remained for five weeks, they lived together one week, when, as she says, appellant put them out without making provision for their maintenance.

The wife says that he spent much of his time in jail, and appellant admits that he had been in jail on several occasions, though we gather from the record that he was there from the latter part of September to October 16th when trial was had, following execution of a bench warrant issued on the indictment. The wife says that he was drunk a good deal of the time, and she did not know what became of his money unless he spent it on another woman.

Appellant denies the drunkenness charge and while admitting that he sometimes met the woman on the street, and "sometimes rode around with her in her car," says that he "never spent a dime on her in my life." It appears from the proof that appellant was a veteran of the last war, and received a pension of $27.60 each month. He claims that he turned his check over to the wife each month, but there is no proof that he ever gave her or the children any money at other times, except in one instance. At some time, not developed in proof, he sold his home for $450. The wife says that of the proceeds she and the children got $25. Appellant

says that out of the proceeds he paid a bank debt of $250, and used the remainder in providing for the children "as long as it lasted."

The wife says that when he left the second time she and the children went back to her mother's home where they remained at least until the time of trial in October. It does not appear from the proof that the wife has any property and it may be gathered that she has not, since she says that when she was put out of the house where they lived, she had to leave the kitchen stove to pay on the rent.

Appellant testified that he was a disabled veteran; he had contracted the disease known as trench foot while in the service; that after returning home he had received an injury to his knee in an automobile accident. In his testimony the most he would say was that he was a disabled veteran, and not an able-bodied man, not able to work. It developed during his testimony that he is a carpenter; that during his five weeks absence he was visiting his brother in Cincinnati where he helped the brother build a trailer, for which he says he received no pay.

His testimony shows fairly well that up to the time he left home he did turn over his pension checks to his wife. He says she got the July check while he was absent, and his August check while he was in jail. The wife says she cashed the July check, but he took the money to make the trip, and left the family penniless. She said she cashed the August check and sent him $18 at his demand.

The sole contention of appellant is that the verdict is not sustained by sufficient evidence, and while it must be admitted that the evidence is not overwhelming, yet it appears to us that there was a sufficiency to authorize submission to a jury. It is conflicting but the jury determined that the testimony of the Commonwealth justified a finding of guilt.

Counsel for appellant insists that if appellant's failure to provide properly for his children was due to his afflicted condition, he should not have been convicted. Appellant himself does not make a good faith showing on this proposition. If he in fact was afflicted so as to prevent him from doing any work, this situation could

have readily been presented to the jury for its consideration. As far as the record shows, appellant has not worked or made effort to earn a livelihood for himself and family since the end of his war service. There is on his part a lack of showing of good faith.

Counsel for appellant points us to the case of Cox v. Commonwealth, 280 Ky. 94, 132 S. W. 739, 131 A. L. R. 478, as laying down the rule to the effect that in order to sustain a conviction under the statute it is essential to show (1) that there was an abandonment, and (2) infant children must have been left in destitute circumstances. We cited Webb v. Commonwealth, 237 Ky. 141, 35 S. W. 2d 14. In the first case we reversed because it was shown that the children were left with their mother who was able to look to their support. In the second case it developed that following divorce of the parties the custody was awarded to the mother. We found in each case there was not an abandonment within the meaning of the statute. These cases afford no comfort to appellant, since there was proof both of the abandonment and destitute circumstances of the children.

Counsel insists that since the appellant testified that he had done all he could do, there was no violation of the statute, and on this theory he cites what was said in the Webb case, quoting from Stone v. Commonwealth, 211 Ky. 485, 277 S. W. 811. In substance we said that a father was not guilty of a violation of the statute if he had done the best he could, willingly and in good faith, but because of extreme poverty and a large number of children and deficient business ability, he failed to provide properly for his infant children. We also said that the father might sustain a defense to the prosecution if he shows that because of illness or circumstances over which he had no control he was unable to do that which the statute requires.

The difficulty here is for us to conclude from the proof that appellant satisfactorily showed that he was disabled to such an extent that he was unable to do some remunerative work, or to show good faith on his part of desire or effort to see that his children received food, clothing and proper housing. That he was during the period of absence able to perform some work as a carpenter is shown by his own testimony.

In the case of Black v. Commonwealth, 259 Ky. 169, 82 S. W. 2d 321, we reiterated the circumstances under which a parent might make defense sufficient to avoid conviction, but held that if the burden of support was cast on others, without support or effort from the father, the statute is violated. See also Ragsdale v. Commonwealth, 195 Ky. 750, 243 S. W. 1056. In Gee v. Commonwealth, 263 Ky. 808, 94 S. W. 2d 17, appellant charged with desertion claimed that he was physically incapacitated from work, and produced testimony of doctors to that effect. On the other hand it was shown that he had stated that he earned $100 per month. The question of power to earn was one for the jury; so it was here where appellant showed that he had done some work, and did not show effort to obtain or do other work, or make any such effort but apparently relied on his meager pension check to support himself and family.

In strikes the court upon reading of this record, which manifests a bad feeling between the parents, that the situation might have been better solved by resort to the statutes in relation to dependency of juveniles, but the officers saw proper to take a different course, and since we find no prejudicial error we are compelled to affirm the judgment.

Judgment affirmed.