**Nadine BRUMMITT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 1, 1962.

J. C. Helton, Grant F. Knuckles, Pineville, for appellant.

John B. Breckinridge, Atty. Gen., Joe Nagle, Asst. Atty. Gen., Frankfort, for appellee.

STANLEY, Commissioner.

Appellant, Nadine Brummitt, was indicted for deserting her three children under conditions defined in KRS 435.240. The trial court directed an acquittal in relation to two of the children and submitted the case to the jury as to the defendant's son, Jerry Wayne Brummitt. She was found guilty and her punishment fixed at imprisonment in the penitentiary for one year.

The statute, KRS 435.240(1), reads:

"The parent of any child residing in this state who leaves, deserts or abandons a child under the age of sixteen years, leaving the child in destitute or indigent circumstances and without making proper provisions for the board, clothing, education and proper care of the child in a manner suitable to the condition and station in life of the parent and the child * * * shall be confined in the penitentiary for not less than one nor more than five years."

The appellant and Rufus Brummitt were married September 30, 1950. She was then about sixteen years old and he about forty-eight. The child, Jerry, was born about four months afterward. He was the son of a former husband, Jess Forrester. The two other children, girls, were born of the union of Nadine and Rufus. Jerry was kept and supported by Brummitt along with his own two children. At the time the defendant left home, as will shortly be described, Jerry was eight or nine years old, and the youngest child was about two.

This appears to be our first case of conviction of a mother. But the statute makes no distinction between a father and mother. Unusual also is the question of the relation of a stepfather with respect to the exoneration of criminal responsibility of a mother under the circumstances.

The statute was designed to protect children of tender years from the violation of parental legal obligations and, in part, to punish parents who refuse to discharge their natural duties. 39 Am.Jur., Parent and Child, §§ 103, 112; Ragsdale v. Commonwealth, 195 Ky. 750, 243 S.W. 1056; Brock v. Commonwealth, 206 Ky. 621, 268 S.W. 315; Commonwealth v. Kirk, 212 Ky. 646, 279 S.W. 1091, 44 A.L.R. 816. The interpretation of the statute is that although a child was abandoned by a father, he is not liable if the child or his mother had independent and sufficient means of support, but that there is liability and guilt even though the child is being provided for or is receiving support from sources other than a parent. West v. Commonwealth, 194 Ky. 536, 240 S.W. 52; Webb v. Commonwealth, 237 Ky. 141, 35 S.W.2d 14; Black v. Commonwealth, 259 Ky. 169, 82 S.W.2d 321; Gee v. Commonwealth, 263 Ky. 808, 94 S.W.2d 17; Cox v. Commonwealth, 280 Ky. 94, 132 S.W.2d 739, 131 A.L.R. 478; Hodges v. Commonwealth, Ky., 269 S.W.2d 280.

The trial court ruled that as the two girls had been taken care of by their father, the defendant was not guilty of deserting them, but that the stepfather should not be regarded the same as a natural father. The appellant maintains this was error and that she was entitled to acquittance of the charge of deserting her son, Jerry. So we have the question as to the category of a stepfather in our construction of the statute.

We have held that desertion by an adoptive father is within the terms of the statute as the law imposes upon him the responsibilities of a natural father. Commonwealth v. Kirk, 212 Ky. 646, 279 S.W. 1091, 44 A.L.R. 816. The word "parent" commonly means a father or mother by blood, and it is generally recognized that a stepfather, as such, is under no legal obligation to support the child of his wife by a former husband. But if a stepfather voluntarily takes her child into his family and as a member of his household, he places himself in loco parentis and assumes an obligation to maintain and support the child if he has no income of his own. The relationship is substantially the same as of a parent and child. 39 Am.Jur., Parent and Child, §§ 61, 62; 67 C.J.S. Parent and Child §§ 79, 80; Burba v. Richardson, 14 Ky. Law Rep. 233; Dixon v. Hosick, 101 Ky. 231, 41 S.W. 282, 19 Ky. Law Rep. 387; Cashen v. Riney, 239 Ky. 779, 40 S.W.2d 339; Rudd v. Fineberg's Trustee, 277 Ky. 505, 126 S.W.2d 1102. We are not concerned in this case expressly or definitely with the absolute civil duty of a stepfather or the reciprocal right of a stepchild to his support. We are only concerned with the question of whether a deserting mother could reasonably expect that her child's existing care and support would be continued and not be cast upon others who might care for the child as a matter of morality or charity. Cf. Lincks v. Commonwealth, 226 Ky. 370, 10 S.W.2d 1112. Here, the stepfather had given the baby his name of Brummitt and had received and accepted the child into his home

and maintained him in the same way he did the other children. He completely assumed a relation in loco parentis to the boy, and, so far as concerns this case, should be regarded as the boy's own father.

We look to the facts.

Rufus Brummitt worked in the mines at Molus as a coal loader. He testified that on a Saturday in September, 1959, his wife took his pay check to buy groceries. When he next heard from her, two or three months afterward, she was in Chicago. He kept the three children at home, doing the best he could for them. He had 75 pounds or "three stands" of lard, four 25-pound sacks of beans and "plenty of canned stuff." The mother had made no arrangements for anybody to feed or care for the children. He laid off from work for two weeks to look after them. About two months after the mother abandoned her family, Jerry was taken by his grandmother (his mother's mother), and the two younger children were taken by Brummitt's sister. She had been caring for them up to the time of their mother's trial. There was corroborative evidence.

While the question of submission of the case to the jury depends upon the Commonwealth's evidence, it is fair to the defendant to give a résumé of her story. She had asked Rufus for a divorce and custody of the children, and he replied that he would "see me dead first." She then told him she was going to leave. She wrote her mother, who lived in Harlan, that she was going to Chicago to get a job and asked her to take care of the children and she would send her $15 or $20 a week. Her mother testified that she went for the children, but Rufus would not let her have them. However, three days later he brought them to her home, but it does not appear that they stayed there. Nadine had sent money to her mother for Jerry's care.

It was at the close of the Commonwealth's evidence that the trial court dismissed the charge as to the two little girls upon the ground that they had not been left "in

destitute or indigent circumstances," as the statute has been construed, for they were left with their father, who was able to provide financial support.

We are of opinion, as above suggested, that the court's only reason for submitting the case as to Jerry is erroneous, namely, that he was not left with a parent. The question arises whether the Commonwealth's evidence established the defendant's criminal responsibility notwithstanding. The same question would apply in regard to the two younger children, but as the defendant was acquitted on the charge of their desertion, it cannot be considered.

Our previous cases have all related to and emphasized the element of destitution of a deserted child as being only a financial condition. Little has been said regarding the other element of the crime. That cannot be ignored. Having in mind the objectives of the statute, we conclude that the term "in destitute or indigent circumstances" is not restricted to money matters.

■ The word "destitute" certainly refers to being in need of money, as does indigent (meaning poverty), but the word also has the general meaning of "bereft or not in possession of something necessary or desirable; deficient; lacking; devoid; not possessing the necessities of life." Webster's International Dictionary. So the statute comprehends more than merely destitute of financial resources. It couples with the word the condition, "without making proper provisions for the board, clothing, education and proper care of the child." Could it be said that if a mother deserted or left alone a baby who might have a fortune of its own that she should go acquit? Here we have an eight-year-old boy left with his stepfather, who was a mine laborer and dependent wholly upon his daily wages for a living. As the Assistant Attorney General suggests in his brief, the boy could not eat lard or the beans out of the sack. He could not prepare his own meals or look after his clothing.

He needed a home with the natural and emotional care of his mother. His health and general welfare required a mother's care. Training is a feature regarded in child custody cases. Without these things the boy was not being properly cared for, which is the contemplation of the statute. Gee v. Commonwealth, 263 Ky. 808, 94 S.W.2d 17. We are of opinion that the evidence authorized the submission of the question of the defendant's guilt to the jury.

■ However, we are constrained to reverse the judgment because of the misconduct on the part of the Commonwealth's Attorney in his opening statement of the case to the jury. The court overruled defendant's objections to the following statements:

"She couldn't be found until she and Hedgel moved back into Bell County. She wasn't divorced. Mr. Brummitt was served with notice of divorce suit in October of this year, and a man of the name of 'Honey Bell' Saylor went to Bell County and found her and Hedgel Saylor living together in July."

"She has been evading process of the law since March of the year before, and that is the reason this case hasn't come up for trial until now. She hasn't been in the State of Kentucky and has been dodging process and was only apprehended in July."

"Things will come out in this evidence—I'm going to show she left her own child, and Mr. Brummitt's. I will prove by him, even when she was home, he did the cooking and even washed and cooked for the children and even for her. If you find from this evidence the facts are what I have told you, she ran off and left her child—we don't care if you base it entirely on the one child, I think you ought to hand her a pretty stiff sentence. I think the evidence calls for that kind of verdict."

It is readily apparent that these statements were unwarranted and highly prejudicial. Poison was added to the statement that the defendant was found living with another man in Bell County when that man's wife was called to the stand, and in answer to the question whether she knew Nadine Brummitt said, "I just knew her after she took my husband." The court overruled the defendant's motion to discharge the jury because of this statement.

As written in Lickliter v. Commonwealth, 249 Ky. 95, 60 S.W.2d 355, "The only legitimate purpose of an opening statement is so to explain to the jury the issue they are to try that they may understand the bearing of the evidence to be introduced. There is no occasion and no excuse for attempting to influence the jury in advance by improper statements as to evidence which counsel knows he cannot prove or will not be permitted to introduce." We reversed the judgment of conviction because the "poison of prejudice with which the minds of the jury had been innoculated in the beginning of the trial could not be and was not altogether removed" by the court's admonition at the end of the trial that the jury should not consider the statement. In the present case there was no admonition. See also Steele v. Commonwealth, 252 Ky. 730, 68 S.W.2d 6, 7; Turner v. Commonwealth, Ky., 240 S.W.2d 80.

The judgment is

Reversed.